# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | | |
|---|---|---|---|
| CHRISTOPHER MICHAEL BING, | ) | | |
| | ) | | |
| Movant, | ) | | |
| | ) | | |
| v. | ) | Case No. | CV415-002 |
| | ) | | CR412-084 |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **REPORT AND RECOMMENDATION**

Moving for 28 U.S.C. § 2255 relief, Christopher Michael Bing claims that he instructed his lawyer to file a direct appeal from his drug conspiracy conviction but she failed to do so. Doc. 50 at 1.[1] He thus argues that L. Nicole King was ineffective on that score, as well as when she failed to argue away two prior convictions used to enhance his sentence. *Id.* at 1-2. He wants his direct-appeal right restored. *Id.* at 2-3 n. 1, 6. In the alternative, he seeks a reduced sentence because an effective lawyer would have convinced the sentencing judge not to double count two prior convictions. *Id.* at 2. Opposing, the government argues

---

[1] Cites are to the criminal docket, CR412-084. Page references are to the CM/ECF screen page rather than the referenced document's own internal pagination.

that his § 2255 motion is untimely.[2]  Doc. 5 at 6-8.

## I. BACKGROUND

Bing pled guilty and was sentenced to 264 months' imprisonment on November 20, 2012.  Doc. 30.  As noted above, he says he asked King to file an appeal but she failed to do so.[3]  On April 15, 2013, he filed his own,

---

[2] It also argues that it should be dismissed for lack of signature under penalty of perjury, as required by 28 U.S.C. § 2255 Rule 2(c)(5), *id.* at 6, but Bing has addressed that.  *See* doc. 55 (affirming that he has made his factual assertions under penalty of perjury).  Hence, the Court denies the motion on that basis.

[3] *Eason v. United States*, 2014 WL 4384652 (S.D. Ga. Sept. 3, 2014) and *Ortega v. United States*, 2014 WL 3012657 (S.D. Ga. July 2, 2014), explored a lawyer's duty to consult with her client about taking a direct appeal, especially when the client requests it.  *See Ortega*, 2014 WL 3012657 at *1 n. 2 (collecting cases).  To that end, this Court developed a "Notice" form designed to memorialize counsel's consultation with her client and reflect the client's decision whether to appeal. *See Guyton v. United States*, 2013 WL 1808761 at * 2 (S.D. Ga. Apr. 29, 2013) (noting that the "Notice of Counsel's Post-Conviction Obligations" requires that both counsel and client execute and file the form, thus preserving a record of defendant's instructions regarding an appeal).

A lawyer's failure to use that form can result in costly evidentiary hearings and "second-chance appeals."  *See Mingo v. United States*, ___ F. Supp. 3d ___, 2014 WL 7184011 at * 3 n. 3 (S.D. Ga. Dec. 17, 2014) ("What has been happening in 'lost Notice' cases . . . is that the guilty-plea convicted defendant gets sentenced, and then is free to examine the record and spot a missing Notice. Later, at no cost to him (there is no filing fee for § 2255 motions), he may file a § 2255 motion claiming he wanted to appeal but his lawyer ignored him.").

It costs a lot to conduct the hearing (appointment of counsel for defendant, transporting him from a distant prison, burdening the court's time and limited resources).  *See Hayes v. United States*, 2011 WL 3468799 at * 5 n. 5 (S.D. Ga. Aug. 9, 2011) ("It is not difficult to estimate that § 2255 motions like this cost the taxpayers $10,000 or more, and in a time of record national debt."), *adopted*, 2011 WL 4704219 (S.D. Ga. Oct. 6, 2011).  That cost likely may be avoided where defense counsel simply

2

*pro* se notice of appeal. Doc. 33. It was untimely because under Fed. R. Crim. P. 4(b)(1)(A), it had to be "filed in the district court within 14 days" of the entry of judgment, *id.*, which means December 4, 2012.

Meanwhile, the Eleventh Circuit refused to accept King's September 9, 2013 request to be discharged as counsel; it instead directed her to file a brief on the merits or, if warranted, pursuant to *Anders v. California*, 386 U.S. 738 (1967), accompanied by a motion to withdraw as his lawyer. Doc. 54-1 at 3-4 (attached appellate docket sheet).) King repeatedly tried to file an *Anders* brief but that court consistently rejected it for various deficiencies. *Id.* at 4-6. It finally discharged her in December 2013 and appointed new appellate counsel, who filed a merits brief. *Id.* at 5-6.

On May 28, 2014 -- more than a year after Bing filed his own notice

---

files the Notice reflecting his client's wishes regarding an appeal. *See, e.g., Eason*, 2014 WL 4384652 at * 3 (rejecting lost-appeal claim because the Notice form filed in that case proved that movant had expressly elected not to appeal).

Hence, the Court has repeatedly cautioned attorneys appearing before it that the failure to file a Notice after conviction will result in these consequences: (1) counsel appointed under the Criminal Justice Act will not be paid for their services, and (2) counsel (whether retained or appointed) may be subject to sanctions, to include paying some or all of the expenses associated with conducting a § 2255 hearing that would have been unnecessary had the form been used. Here it is apparent that King failed to file a Notice in this case. While she skates away on a technicality (Bing's § 2255 motion is untimely), sanctions await any future failure. *See Holland v. United States*, 2014 WL 5241531 at * 3 (S.D. Ga. Oct. 14, 2014).

3

of appeal -- the government moved to dismiss his appeal as untimely. *Id.* at 6. The Eleventh Circuit granted that motion and dismissed Bing's appeal on August 22, 2014. *Id., cert denied*, 135 S.Ct. 506 (Nov. 10, 2014); doc. 54-1 at 6.

## II. ANALYSIS

The government contends that, even under the unusual circumstances of this case, Bing should have recognized that his appeal was untimely and would ultimately be dismissed. Therefore, it concludes, he should have filed his § 2255 motion by December 4, 2013 -- one year (plus Rule 4(b)(1)(A)'s 14 days) after his conviction became final. Doc. 54 at 9-14. Nor, the government insists, is he entitled to equitable tolling. *Id.* Bing disagrees. Doc. 50 at 2-6 (arguing that King's ineffectiveness and resulting delay supports equitable tolling and justifies the grant of a new appeal, if not an evidentiary hearing on his IAC claims).

Bing's § 2255 motion is time-barred. Again, he took no timely appeal, so his November 20, 2012 conviction became final on December 4, 2012, 14 days after judgment was entered. *Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011); Fed. R. App. P. 4(b)(1)(A). 28 U.S.C. §

2255(f)(1) gave him only until December 4, 2013, to file his § 2255 motion, which at the earliest he filed on December 29, 2014.[4] Doc. 50.

It is Bing's burden to show equitable tolling,[5] and he fails. He knew by April 9, 2013 that King had missed his appellate deadline -- it's

---

[4] Under what is known as the "mailbox rule,"

> a *pro se* prisoner's motion to vacate is deemed filed on the date it is delivered to prison authorities for mailing. 28 U.S.C. foll. § 2255, Rule 3(d); *see also Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir.2001) (per curiam). Absent evidence to the contrary, the Court assumes that the motion was delivered to prison authorities on the day the prisoner signed it. *Washington*, 243 F.3d at 1301.

*Price v. United States*, 2015 WL 2408495 at * 2 n. 2 (N.D. Ga. May 19, 2015). Bing signed his § 2255 motion on December 29, 2014, doc. 50 at 6, and his mailing envelope is postmarked January 2, 2015, doc. 50-2, but his § 2255 motion was not filed here until January 6, 2015. Doc. 50. Given the lapse of time, however, the mailbox-rule calculation of Bing's filing is immaterial; even if the Court uses the earliest filing date -- December 29, 2014 -- he is still too late.

[5] As has been explained,

> [t]he one-year limitations period is subject to equitable tolling, which applies when a petitioner "untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (quotation marks omitted). Equitable tolling is an "extraordinary remedy" reserved for "rare and exceptional circumstances." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (quotation marks omitted). To establish entitlement to equitable tolling, a petitioner must prove "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 2562 (2010) (quotation marks omitted). A petitioner must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011).

5

when he mailed his own Notice of Appeal to the Court. Doc. 33 at 2. And his ignorance of the law does not save him.[6] Habeas petitioners are routinely denied equitable tolling for untimeliness caused by legal ignorance, low intellect, lack of counsel, or outright attorney negligence. *Spears v. Warden*, 2015 WL 1530119 at * 3 (11th Cir. Apr. 7, 2015); *Hill*, 242 F. App'x at 636 ("A garden variety error -- misaddressing the notice of appeal -- caused Hill's state habeas appeal to be filed untimely. We have repeatedly denied equitable tolling predicated on a claim of attorney negligence."); *Doe v. United States*, 469 F. App'x 798, 801-02 (11th Cir. 2012) (no equitable tolling based on low IQ, absent an explanation of how movant's mental impairment prevented him from exercising due diligence

---

*Gillman v. Sec'y, Fla Dep't of Corr.*, 576 F. App'x 940, 943 (11th Cir. 2014).

[6] Note that no one actively misled him on his direct appeal's untimeliness, a distinction that is subtle but critical here. *Compare Spottsville v. Terry*, 476 F.3d 1241, 1245-46 (11th Cir. 2007) (petitioner entitled to equitable tolling because state habeas court instructed him to file his application for a certificate of probable cause in the wrong court), *with Hill v. Jones*, 242 F. App'x 633, 636-37 (11th Cir. 2007) (distinguishing *Spottsville* in denying relief because the petitioner simply mailed his notice of appeal from the denial of Rule 32 relief to the wrong court without having been given erroneous information by a court), cited in *Butler v. Estes*, 2015 WL 1883846 at * 5 (N.D. Ala. Apr. 28, 2015) ("[I]n Butler's case, he alleges only that he was not told of certain legal rights, not that a court or anyone else affirmatively told him something wrong."); *Burke v. Barrow*, 2015 WL 1034306 at *2 (M.D. Ga. Mar. 10, 2015) ("Mistakenly sending a court filing to the wrong address, unaccompanied by any allegation the Petitioner was affirmatively misl[e]d as to the correct address, does not constitute an "extraordinary circumstance.").

or filing a timely motion); *Simmons v. McLaughlin*, 2015 WL 2341677 at * 3 (S.D. Ga. May 14, 2015); *see also Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 970 (11th Cir. 1997) (neither a litigant's *pro se* status nor ignorance of the law normally warrants equitable tolling).[7]

So even if it is true that the Eleventh Circuit's pre-dismissal actions might have led an objective observer to believe that the direct appeal was still viable, and thus that Bing could wait to file his § 2255 motion, that error at most arises from his legal misapprehension, and was born of no misleading *directive* from that court. *See supra*, n. 6. Nor does Bing claim that King deceived him, which could support equitable tolling.

---

[7] Even legal ignorance actually caused by counsel will not suffice:

> Spears also has not shown how his attorney's misleading advice regarding his appellate rights prevented him from timely filing a § 2254 petition. *See Holland*, 560 U.S. at 649, 130 S.Ct. at 2562. While we understand why Spears might have chosen to rely on his counsel's advice, he had the ability to choose not to rely upon it. We have stated that *"pro se* litigants, like all others, are deemed to know of the one-year statute of limitations." *Outler v. United States*, 485 F.3d 1273, 1282 n. 4 (11th Cir. 2007) (concerning the one-year limitation period for motions by federal prisoners under 28 U.S.C. § 2255). And we have not accepted a lack of a legal education as an excuse for a failure to file in a timely fashion. *See Rivers v. United States*, 416 F.3d 1319, 1323 (11th Cir. 2005) (stating that "procedural ignorance [has never been accepted] as an excuse for prolonged inattention when a statute's clear policy calls for promptness" (quoting *Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 1582 (2005)).

*Spears*, 2015 WL 1530119 at * 3; *see also Jackson v. Warden*, CV414-193, doc. 7 at 1-2 (S.D. Ga. May 28, 2015) (attorney's erroneous advice on time period for filing a habeas petition did not support tolling).

*United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (equitable tolling was warranted when a petitioner's attorney deceived the petitioner by telling him that he timely filed his federal habeas petition), cited in *Hancock v. Estes*, 2014 WL 3898085 at * 7-9 (S.D. Ala. Aug. 11, 2014). Again, equitable tolling demands more than simple ignorance of the law, which means that Bing was required to cut through the Eleventh Circuit's unwittingly created legal fog about whether his appeal was still pending.[8]

In that respect, the government had no duty to warn Bing of his missed deadline. *See Hill*, 242 F. App'x at 637 ("That the state might

---

[8] General assertions don't make the grade, either. *See Doe*, 469 F. App'x at 800 ("Although Doe contends that his counsel failed to file a notice of appeal upon request after sentencing, he has not explained below or on appeal when he learned of counsel's failure or why he waited so long to file his § 2255 motion. He merely says that, while in prison, he learned about his right to have counsel file a direct appeal, but he does not demonstrate how he exercised due diligence in pursuing his rights or why the district court clearly erred in concluding that he failed to exercise due diligence. Accordingly, he has not satisfied his burden of showing that equitable tolling applies on this basis."). *Doe*, by the way, touched on what the Eleventh Circuit explored in *Dauphin v. United States*, 2015 WL 1137154 at * 3-4 (11th Cir. Mar. 16, 2015) (after the district court found that § 2255 movant failed to exercise due diligence in discovering that his attorney did not file an appeal, it had to consider when that fact reasonably could have been discovered with exercise of due diligence, then use that date as starting date for limitations period to determine whether § 2255 motion had been filed within one year of date on which that discovery reasonably would have been made). Here, due diligence would have prompted a hypothetical movant to inquire about, then act on his § 2255 rights shortly after April 9, 2013, when Bing mailed in his own Notice of Appeal, thus self-alerting himself that something was wrong (otherwise, he would have rested on the current state of his appellate filings). Again, he waited until December 29, 2014 to file his § 2255 motion. *See supra* n. 4. That is simply too long.

have earlier brought Hill's mistake to his attention does not shift the burden of diligence to the state. Where, as is the case here, no evidence has been proffered that the delay was a consequence of malfeasance on the part of the state, Hill is entitled to no equitable tolling merely because the state failed to flag his error earlier.").

To the extent he may be said to have raised it, Bing also fails to meet the attorney-abandonment showing required for equitable tolling. He at most has shown gross neglect in the *direct-appeal* stage of his proceedings, but that is not enough. *See Cadet v. Fla. Dept. of Corrs.*, 742 F.3d 473, 481 (11th Cir. 2014) ("[A]attorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for purposes of equitable tolling; abandonment of the attorney-client relationship, such as may have occurred in *Holland*, is required.").[9] Even if it is assumed

---

[9] Sentenced to death in state court, Albert Holland exhausted his state direct and collateral review remedies but failed to file a timely federal petition, despite his many letters to his lawyer emphasizing the importance of doing so. His lawyer, Collins, apparently did not do the research necessary to find out the proper filing date, despite the fact that Holland had identified the applicable legal rules for him. Collins also failed to timely inform Holland that the state supreme court had decided his case, despite Holland's many pleas for that information. In fact, Collins failed to communicate with Holland over a period of years, despite Holland's pleas for responses to his letters. Holland also repeatedly asked that the state courts and state bar remove Collins from his case. *Holland*, 560 U.S. at 634-44. And "the *very day* that Holland discovered that [the one-year] clock had expired due to [counsels'] failings, [he]

prepared his own habeas petition *pro se* and promptly filed it with the District Court." *Id.* at 653. All of these facts were before the federal district and circuit courts when Holland sought equitable tolling.

Nevertheless those courts denied Holland equitable tolling. The Eleventh Circuit ultimately reasoned that "no allegation of lawyer negligence or of failure to meet a lawyer's standard of care -- in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part -- can rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling." *Holland*, 560 U.S. at 630-31.

That was "too rigid," concluded the Supreme Court. *Id.* at 649. Lower courts must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* at 650. So while "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling," *id.* at 651-52 (quotes and cites omitted), extraordinary circumstances may exist in "far more serious instances of attorney misconduct" not limited to those contemplated by the Eleventh Circuit. *Id.* at 652. The Court thus reversed and remanded for an evidentiary hearing under its new standard. *Id.* at 633. Holland later wound up getting his claims heard on the merits. *Holland v. Tucker*, 854 F. Supp. 2d 1229 (S.D. Fla. 2012), *rev'd in part and aff'd in part*, *Holland v. Florida*, 775 F.3d 1294 (11th Cir. 2014).

The Court revisited attorney abandonment in *Maples v. Thomas*, ___ U.S. ___, 132 S.Ct. 912, 923-24 (2012) (post-conviction counsels' abandonment could provide cause to excuse a petitioner's procedural default: "We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him. We therefore inquire whether Maples has shown that his attorneys of record abandoned him, thereby supplying the "extraordinary circumstances beyond his control,". . . necessary to lift the state procedural bar to his federal petition.").

It thus takes a lot to meet the abandonment requirement for tolling. *See, e.g., Perez v. Stephens*, 784 F.3d 276, 283 (5th Cir. 2015) ("[T]he failure by an attorney to tell her client of a civil judgment in time to file an appeal is not 'abandonment.'"); *Moses v. Cain*, 2015 WL 269040 at * 5 (E.D. La. Jan. 21, 2015) ("Here, Petitioner does not allege that he was actively misled or that some extraordinary obstacle prevented him from asserting his rights. He does not allege that his attorney abandoned his claim. Petitioner was aware of the statute of limitations, as evidenced by his October

that King abandoned Bing on his direct appeal, that did not legally or operationally prevent him from timely complaining about her (*i.e.*, filing a § 2255 motion). Again, Bing knew by April 9, 2013 that King had failed to file his appeal, for he mailed his own appeal notice that day. Doc. 33 at 2. *Cadet*-level abandonment "denotes absolute renunciation or withdrawal, or a complete rejection or desertion of one's responsibilities, a walking away from a relationship." *Cadet*, 742 F.3d. at 484. If King "walked away," it was only from her direct-appeal obligations, and that did not obstruct Bing from pursuing collateral remedies (he held no right to counsel in that realm and, since King had no obligation to represent him there, he would not have been subjected to the hybrid-representation rule, *Cross v. United States*, 893 F.2d 1287, 1291–92 (11th Cir. 1990) (a defendant who is represented by counsel has no right to act as his own co-counsel, i.e., there is no right to "hybrid representation" partly by counsel and partly by defendant)).

---

1999 letter to his attorney. He argues that his attorney failed to timely file the application, but he offers no explanation for his failure to file the federal application himself."); *see also id.* at * 10 ("The record in this case shows that petitioner was not reasonably diligent in pursuing federal habeas relief. Neither the fact that he retained an attorney for collateral review nor that the attorney may have been ineffective affects petitioner's obligation to exercise "reasonable diligence.").

Bing, for that matter, could not show abandonment even if King agreed to assist him with his § 2255 motion, but then bungled it. *Cadet*, 742 F.3d. at 483-85 (habeas counsel's misinterpretation of the filing deadline and failure to conduct any research into the matter, particularly when faced with petitioner's persistent challenges to his calculation, while negligent, did not constitute "abandonment" of the attorney-client relationship, and thus did not qualify as an "extraordinary circumstance" required to equitably toll the one-year limitations period for petitioning for federal habeas relief; fact that counsel ought to have known better or ought to have done the necessary research to know better did not mean that he was "acting adversely" to petitioner's interests, as required to constitute abandonment under principles of agency law).[10]

## III. CONCLUSION

Christopher Michael Bing's 28 U.S.C. § 2255 motion therefore must

---

[10] Bing, by the way, enjoys no constitutional right to assistance of counsel on collateral review. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Lugo v. Sec'y, Fla. Dep't of Corrs.*, 750 F.3d 1198, 1213 (11th Cir. 2014); *Arnold v. Porter*, 2015 WL 3409225 at * 2 (S.D. Ga. May 5, 2015).

be **DENIED** as untimely. His request for appointment of counsel,[11] doc. 50 at 1, is **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this 6th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[11] The Rules Governing § 2255 Cases provide that appointment of counsel is proper if an evidentiary hearing is needed or if certain discovery is required, provided that petitioner qualifies under 18 U.S.C. § 3006A(g). Rules 6(a), 8(c). Neither an evidentiary hearing nor discovery are required here, and Bing has demonstrated his ability to file appropriate pleadings seeking § 2255 relief.